UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| SANTIAGO RUBIO, | } | |
| | } | |
| Petitioner, | } | |
| VS. | } | CIVIL ACTION NO. H-07-40 |
| | } | |
| NATHANIEL QUARTERMAN, | } | |
| | } | |
| Respondent. | } | |

OPINION ON DISMISSAL

Petitioner Santiago Rubio, an inmate incarcerated in the Texas Department of Criminal Justice – Correctional Institutions Division ("TDCJ-CID"), has filed a petition for a writ of habeas corpus under 28 U.S.C. § 2254, challenging his felony conviction for burglary of a habitation. (Docket Entries No.1, No.2). Respondent has filed a motion for summary judgment, seeking dismissal of the petition on the ground that petitioner failed to meet his burden of proof under 28 U.S.C. § 2254(d). (Docket Entry No.9). Petitioner has filed a response to the motion (Docket Entry No.10) and a motion for an evidentiary hearing. (Docket Entry No.11). After considering all pleadings and the entire record, the Court will grant respondent's motion for summary judgment and dismiss this habeas petition.

I. BACKGROUND AND PROCEDURAL HISTORY

Petitioner was indicted by a Harris County, Texas grand jury of burglary of a habitation with intent to commit aggravated robbery in cause number 964905. *Rubio v. State*, No.14-04-00030-CR, Clerk's Record, page 2. A jury in the 177th Judicial District Court of Harris County heard evidence of the following, as summarized by the Fourteenth Court of Appeals for the State of Texas ("Fourteenth Court") in its unpublished Memorandum Opinion:

> In the early morning hours of March 18, 2003, complainant Jessica Gonzalez, her husband, Oliver Anilpas, and their daughter were watching television together in a bedroom of their home when two men entered the room. One of the men wore a ski mask and carried a shotgun. He pointed the gun at Anilpas's chest and demanded money and jewelry. His accomplice escorted Gonzalez to the kitchen to search for money. The two men left the residence without taking any property other than Anilpas's car keys. Gonzalez later identified appellant as the man wearing the ski mask based on her observations of his eyes and eyelashes, his build, and from hearing his voice.

*Rubio v. State*, No.14-04-00030-CR, 2004 WL 2963289, *1 (Tex. App.—Houston [14th Dist.] 2004, pet. ref'd). The jury found petitioner guilty as charged. *Id*. at 77. After considering a pre-sentence report, the state district judge assessed punishment at sixty years confinement in TDCJ-CID. *Id.*, Clerk's Record, page 79.

On direct appeal, petitioner claimed that Gonazalez's identification of him was legally and factually insufficient to support his conviction. *Rubio*, No.14-04-00030-CR, 2004 WL 2963289, *1. The Fourteenth Court found that Gonzalez's unequivocal identification sufficient to uphold petitioner's conviction. *Id*. at *3. Petitioner also claimed on direct appeal that the state district court erred in admitting testimony regarding the subsequent murder of Gonzalez's husband, Oliver Anilpas, because such testimony implicated him as the murderer and was irrelevant to whether he was guilty of the burglary. *Id.* The Fourteenth Court found that petitioner failed to preserve error with a timely and specific objection to the admission of this testimony. *Id*. at *3-4. The Texas Court of Criminal Appeals refused petitioner's petition for discretionary review on the same grounds. (Docket Entry No.1).

Petitioner sought state habeas relief on the following grounds:

1. He was denied a fair trial because:

    a. Three members of the jury were biased against him;

    b. The prosecutor engaged in misconduct by eliciting a statement regarding an extraneous offense from Gonzalez;

     c.  The state district court lacked subject matter jurisdiction;

     d.  He was denied the right to a speedy trial;

2.     He was denied a copy of the complete record;

3.     He was denied the effective assistance of counsel at trial because his trial counsel failed to:

     a.  Object to or strike biased jurors;

     b.  File a motion to dismiss for want of a speedy trial;

     c.  Object to the admission of testimony regarding an extraneous offense and to request an instruction to disregard;

     d.  Visit the crime scene;

     e.  File pretrial motions of any kind;

     f.  Have a firm command of the facts;

     g.  Object to the interpreter not being sworn;

     h.  Convey petitioner's needs to the state district court;

     i.  Have any kind of defense;

     j.  Meet with petitioner to formulate a trial strategy;

     k.  Have the state district court appoint an investigator;

     l.  Investigate anything prior to trial;

     m. Prepare for trial;

     n.  Prepare and inform petitioner for trial;

     o.  Object to the state district court's jurisdiction on the ground that the statute under which petitioner was charged did not contain an "enacting clause;" and,

     p.  Request an instruction on "[p]roof beyond a reasonable doubt" on the extraneous offense;

4.    He was denied the effective assistance of counsel on appeal because his appellate counsel failed to:

    a.  Raise issues regarding the improperly impaneled veniremen;

    b.  Present the extraneous offense error for appellate review;

    c.  Challenge his conviction on speedy trial grounds;

    d.  Challenge the state district court's jurisdiction because the burglary statute did not contain an "enacting clause;" and,

    e.  Challenge the ineffectiveness of trial counsel on grounds that counsel did not request a jury instruction on "[p]roof beyond a reasonable doubt" on the extraneous offense.

*Ex parte Rubio*, Application No.WR-66,402-01, pages 2-90.

The state district court, sitting as a habeas court, found no uncontroverted unresolved facts material to the legality of petitioner's confinement that required an evidentiary hearing and recommended that relief be denied.  *Id.* at 118-121.  On December 13, 2006, the Texas Court of Criminal Appeals denied petitioner's state habeas application without written order on the trial court's findings without a hearing.  *Id.* at cover.

Petitioner filed the pending federal habeas petition on January 4, 2007.  (Docket Entry No.1).  He seeks relief on the same grounds alleged on direct appeal and in his state habeas application.  (*Id.*).

Respondent moves for summary judgment on grounds that petitioner has failed to meet his burden of proof under the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA") and that his claims fail on the merits.  (Docket Entry No.9).  Alternatively, respondent seeks dismissal because petitioner's claims are unsubstantiated and conclusory and because the record fails to corroborate his claims.  (*Id.*).

## II. STANDARD OF REVIEW

In deciding a motion for summary judgment, a court must determine whether "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56.  The moving party bears the initial burden of informing the court of the basis of the motion and identifying the portions of the record demonstrating the absence of a genuine issue for trial.  *Taita Chem. Co. v. Westlake Styrene Corp.*, 246 F.3d 377, 385 (5th Cir. 2001); *Duckett v. City of Cedar Park, Tex.*, 950 F.2d 272, 276 (5th Cir. 1992).  Thereafter, "the burden shifts to the nonmoving party to show with 'significant probative evidence' that there exists a genuine issue of material fact."  *Hamilton v. Seque Software, Inc.*, 232 F.3d 473, 477 (5th Cir. 2000) (quoting *Conkling v. Turner*, 18 F.3d 1285, 1295 (5th Cir. 1994)).

Petitioner's federal habeas petition is subject to the provisions of the AEDPA, Pub. L. No. 104-132, 110 Stat. 1214 (1996).  *Lindh v. Murphy*, 521 U.S. 320 (1997).  The AEDPA, codified as amended at 28 U.S.C. § 2254(d), "substantially restricts the scope of federal review of state criminal court proceedings."  *Montoya v. Johnson*, 226 F.3d 399, 404 (5th Cir. 2000).  Specifically, the AEDPA has "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under the law."  *Bell v. Cone*, 535 U.S. 685, 693 (2002).

The petitioner retains the burden to prove that he is entitled to habeas corpus relief.  *Williams v. Taylor*, 529 U.S. 362 (2000).  In this case, petitioner presented claims in a petition for discretionary review and a state habeas corpus application, which the Texas Court of Criminal Appeals denied without written order.  As a matter of law, a denial of relief by the

Court of Criminal Appeals serves as a denial of relief on the merits of a claim.  *Miller v. Johnson*, 200 F.3d 274, 281 (5th Cir. 2000) (citing *Ex parte Torres*, 943 S.W.2d 469, 472 (Tex. Crim. App. 1997)).  Therefore, only those claims properly raised by petitioner in the petition for discretionary review and state application for habeas corpus relief have been adjudicated on the merits by the state courts.

Where a petitioner's claim has been adjudicated on the merits, section 2254(d) holds that this Court shall not grant relief unless the state court's adjudication:

> (1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1), (2); *Williams*, 529 U.S. at 411-13; *Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000).  Courts are to review pure questions of law and mixed questions of law and fact under subsection (d)(1), and pure questions of fact under subsection (d)(2).  *Martin v. Cain*, 246 F.3d 471, 475 (5th Cir. 2001).

"The standard is one of objective reasonableness."  *Montoya*, 226 F.3d at 403-04 (quoting *Williams*, 529 U.S. at 412-13 (O'Connor, J., concurring)).   Under this standard, a federal court's review is restricted to the reasonableness of the state court's "ultimate decision, not every jot of its reasoning."  *Santellan v. Cockrell*, 271 F.3d 190, 193 (5th Cir. 2001) (citing *Cruz v. Miller*, 255 F.3d 77, 86 (2nd Cir. 2001) (noting that even where a state court makes a mistake in its analysis, "we are determining the reasonableness of the state court's 'decision,' . . . not grading their papers")).

A decision is contrary to clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the

state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." *Williams*, 529 U.S. at 413.  A decision is an unreasonable application of federal law "if the state court identifies the correct governing legal principle . . . but unreasonably applies that principle to the facts of the prisoner's case." *Id.*  To be unreasonable, the state decision must be more than merely incorrect.  *Gardner v. Johnson*, 247 F.3d 551, 560 (5th Cir. 2001).  A reversal is not required unless "the state court decision applies the correct legal rule to a given set of facts in a manner that is so patently incorrect as to be 'unreasonable.'"  *Id.*  Factual findings made by the state court in deciding a petitioner's claims are presumed correct, unless the petitioner rebuts those findings with "clear and convincing evidence."  28 U.S.C. § 2254(e)(1); *Smith v. Cockrell*, 311 F.3d 661, 668 (5th Cir. 2002), *overruled on other grounds by Tennard v. Dretke*, 542 U.S. 274 (2004).

While Rule 56 of the Federal Rules regarding summary judgment applies generally "with equal force in the context of habeas corpus cases," *Clark v. Johnson*, 202 F.3d 760, 764 (5th Cir. 2000), it applies only to the extent that it does not conflict with the habeas rules.  *Smith*, 311 F.3d at 668 (citing Rule 11 of the Rules Governing Section 554 Cases in District Courts).  Therefore, section 2254 (e)(1), which mandates that findings of fact made by a state court are presumed correct, overrides the ordinary rule that, in a summary judgment proceeding, all disputed facts must be construed in the light most favorable to the non-moving party.  *Id.*  Unless the petitioner can "rebut[] the presumption of correctness by clear and convincing evidence" as to the state court's findings of fact, those findings must be accepted as correct.  *Id.*

Courts construe pleadings filed by *pro se* litigants under a less stringent standard than those drafted by attorneys.  *Haines v. Kerner*, 404 U.S. 519 (1972); *Bledsue v. Johnson*, 188

F.3d 250, 255 (5th Cir. 1999).  Thus, *pro se* pleadings are entitled to a liberal construction that includes all reasonable inferences that can be drawn from them.  *Haines*, 404 U.S. at 521. Nevertheless, "the notice afforded by the Rules of Civil Procedure and the local rules" is considered "sufficient" to advise a *pro se* party of his burden in opposing a summary judgment motion.  *Martin v. Harrison County Jail*, 975 F.2d 192, 193 (5th Cir. 1992).

III. ANALYSIS

A. Trial Error

1. Biased Jurors

Petitioner contends that his conviction was obtained by an unconstitutionally impaneled jury.  Petitioner claims that veniremen numbers 7, 35, and 46 proclaimed their bias during voir dire and were not rehabilitated.  He complains that two of the three veniremen were selected to serve on the jury; the third individual, venireman number 35, was struck with a peremptory strike, which could have been used to strike veniremen numbers 7 or 46.  (Docket Entries No.1, No.2).  Respondent maintains that petitioner has failed to prove that any of the jurors were actually biased against him.  (Docket Entry No.9).  The state habeas court did not specifically address petitioner's claim of jury bias but found that petitioner waived complaints of trial error because he did not complain of the same on direct appeal and, alternatively, he failed to allege sufficient facts which, if true, would show trial error.  *Ex parte Rubio*, Application No. WR-66,402-01 at 118.

The Sixth Amendment to the federal Constitution requires, "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed."  U.S. CONST. amend. VI. "Our criminal justice system rests firmly on the proposition that before a person's liberty can be

deprived, guilt must be found, beyond a reasonable doubt, by an impartial decision maker. . . . The Supreme Court has unfailingly protected the jury room from juror bias in a variety of contexts . . . , and this is consistent with the Court's long-held view that the impartial jury is critical in determining guilt and punishment." *Virgil v. Dretke*, 446 F.3d 598, 605 (5th Cir. 2006). In determining whether a venireman exhibited actual bias during voir dire questioning, the Court considers the venireman's answer in context with the initial question asked as well as with the subsequent modifications. *Id.* at 608.

Petitioner contends that venireman number 7, Ms. Looper, twice indicated her bias when she told defense counsel that the burglary of her parent's home years ago "might trigger something." (Docket Entry No.2). He further contends that venireman number 46, Ms. Lake, gave a non-verbal answer indicating that she would be biased against petitioner based on his appearance. (*Id.*).

The record reflects that during voir dire, Attorney Layton Wayne Duer ("Duer"), petitioner's trial counsel, engaged veniremen in a discussion of whether a person's physical appearance might affect their judgment regarding the guilt or innocence of a person. *Rubio*, 14-04-00030-CR, Reporter's Record, Volume 2, pages 59-66. Duer asked the venire if they formed their opinion about a person on the way a person looks and explained the reason for such question, as follows, in pertinent part:

> And it's fairly obvious why I'm bringing that up right now. I would think if you have looked at the folks around the courtroom here, Mr. Rubio has a fairly distinctive look about him, a personal choice that he's made sometime in his past, which may or probably has absolutely nothing to do with why you're here today. . . . But can you tell me that as he sits here right now, that that won't, unless some evidence comes out that the way he looks has something to do with this case, can you tell me right now – I'm going to go down the line and ask you individually – can you tell me that, Look, I know he looks – he has a distinctive look about him with the tattoos and all, but can you tell me that you can be fair in this case, regardless of that?

*   *   *   *   *

Can everybody on the first row say that unless there is some evidence in this case that indicates that the way Mr. Rubio looks has something to do with this, you're not going to let that skew or affect your judgment as to whether or not he's guilty of the offense that he's charged with here today?

I don't care if you say "no." That's fine. If you say "yes," that's fine. I don't care what the answer is. I just need to know what your answer is. If you can be fair, regardless, then everything is fine. If you can't be, if you are going to let the way he looks color your judgment of the evidence in this case, then I need to know about it.

Because there is only one reason Mr. Newman got up here and talked to you and that I'm up here talking to you and that's to get the 12 folks that are going to sit over here and they are going to be fair in judging the evidence. We just want 12 folks that will look at this, unbiased, with an unbiased eye, and tell us what you think, whether or not he's proven his case beyond a reasonable doubt. I don't want – you can understand that you wouldn't want the way you looked to make a difference if you were the defendant in a case.

Folks in the front row, I'm going to go across here and if you can be fair, all you have to do is nod "yes." Can you be fair and not let this enter into your decision? Can everybody do this? Okay?

*Id*. at 59-62.

Several veniremen affirmatively indicated that a person's appearance would bias them in their deliberations. *Id.* at 64-65. The record is silent with respect to the response of venireman number 7. Venireman number 35, however, responded, "Yes, it wouldn't bother me." *Id.* at 65. Attorney Duer continued to question the venire, as follows, in pertinent part:

Mr. Duer: 57? "All right, No.50, Ms. Gonzalez? And the same question, the way he looks would bias you?

Venire person: (Nods head.)

Mr. Duer: 49. Going downhill here. Okay. And 46, is that correct? Would that be a "yes"? I missed it. I'm sorry. All right. Good.

*Id*. at 65-66.

Later, Duer asked if "anyone in here had a relative, a loved one or yourself been a victim of any kind of crime lately and [whether] that experience would affect you if you were chosen to be on this jury[.]"  *Id*. at 71.  Venireman number 7, Ms. Looper, responded, "Yes[.] My parents' home was broken into a few years ago.  I'd like to think that it wouldn't, but I don't know, something might come up that might trigger something."  *Id.* at 72.  Duer asked if she could be fair in this case, to which she responded, "I could sure try.  That's all I can offer you, is I can do my best."  *Id.*

Finally, Duer asked jurors if there was something that they felt was important for the court to know.  *Id.* at 80.  Venireman number 35, Ms. Dickerson, responded, "Yes, sir.  I don't know if it would affect me or not, but Wednesday there was a murder – a home invasion on my street and one of the people that owned the house was murdered and, I mean, they weren't – you know, they were just a neighbor.  It wasn't somebody that I knew but it was kind of close to home."  *Id.* at 81.  Duer asked if she thought it might affect her here, to which she responded, "I don't really know."  *Id*.

After a short recess, the state district judge announced the agreement of the parties to excuse jurors.  *Id*. at 83.  Both sides indicated that did not want to challenge anyone for cause.  *Id.* at 84.  Upon further discussion, the state district court excused venireman number 1 by agreement of the parties because she had expressed bias because of petitioner's appearance.  *Id*. at 85.  Thereafter, Duer made his peremptory strikes.  Among the twelve seated jurors were venireman number 7, Amy Looper, and venireman number 46, Tammy Lake.  *Id.*

A juror is biased if his 'views would prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath."  *Soria v. Johnson*, 207 F.3d 232, 242 (5th Cir. 2000).  To demonstrate actual bias, "admission or factual

proof" of bias must be presented.  *United States v. Bishop*, 264 F.3d 535, 554 (5th Cir. 2001).

"A juror's express doubt as to her own impartiality on voir dire does not necessarily entail a

finding of actual bias."  *Hughes v. U.S.*, 258 F.3d 453, 458 (6th Cir. 2001); *U.S. v. Nell*, 526 F.2d

1223, 1230 (5th Cir. 1976) (noting venireman's statements were express admission of bias

because he expressed strong dislike of unions and "[n]ever once did he say that he would be able

to render a fair and impartial verdict").  Although venireman number 7 expressed her concern

about possible bias as a result of a burglary to her parents' home, which occurred years before

this trial, she also expressed her willingness to do her best to be fair upon further questioning by

Attorney Duer.  Petitioner offers no evidence that venireman number 7's answer that she would

try her best to be fair was false.  Accordingly, the Court finds that petitioner fails to show that the

state courts' finding regarding trial error with respect to this issue was an unreasonable

application of clearly established federal law.

   The record with respect to venireman number 46 is less than clear.  Attorney Duer

initially instructed jurors to nod "yes" to indicate that they could be fair and not let petitioner's

appearance enter into their decision.  *Id.*, page 62.  Midstream during questioning, Duer asked

veniremen to respond affirmatively to indicate bias when he asked, "You're saying that the way

he looks would bias you in your decision?"  *Id.* at 63.  After several veniremen responded to

Duer's new line of questioning, venireman number 35 responded as originally instructed, "Yes, it

wouldn't bother me."  *Id.* at 65.  Nevertheless, Attorney Duer returned to the new line of

questioning by asking another venireman whether, "the way he looks would bias you?"  *Id.*  The

venireman nodded affirmatively.  Duer then addressed venireman number 46, "And 46, is that

correct?  *Id.* at 66.  Venireman number 46's non-verbal response is not recorded, but Duer's

reaction to the response is.  Duer asked, "Would that be a 'yes'?  I missed it.  I'm sorry.  All

right.  Good."  *Id.*  From this cold record, the Court is unable to determine whether venireman number 46 affirmatively indicated a bias as suggested in Duer's question, "Would that be a 'yes," or whether venireman number 46 affirmatively indicated no bias as suggested by Duer's exclamation, "All right. Good."  The Court is also mindful that Duer and the prosecutor later agreed to strike forgotten venireman number 1, who had affirmatively indicated a bias against petitioner on the basis of his appearance, but did not strike venireman number 46.  *Id.* at 83-84. Such act might suggest that Duer and the prosecutor forgot about the bias exhibited by venireman number 46; it may also suggest that venireman number 46 did not express such bias. Without more, the Court finds that petitioner has failed to show the state court's finding regarding trial error with respect to this issue was an unreasonable application of clearly established federal law.

Finally, petitioner's complaint that venireman number 35 was biased, but was not stricken for cause but by a peremptory challenge, does not state a Sixth Amendment claim that he was denied the right to an impartial jury.  "So long as the jury that sits is impartial, the fact that the defendant had to use a peremptory challenge to achieve that result does not mean the Sixth Amendment was violated."  *Ross v. Oklahoma*, 487 U.S. 81, 88 (1988).

Accordingly, the Court finds that respondent is entitled to summary judgment on petitioner's biased juror claims.

## 2. Admission of Evidence of Extraneous Offense

Petitioner next complains that the state district court erred in admitting irrelevant and prejudicial testimony regarding the murder of complainant's husband during the guilt/innocence phase of trial.  (Docket Entries No.1, No.2).  At trial, the prosecutor questioned complainant Gonzalez about the reason her husband was not at trial.  *Rubio*, No.14-04-00030-

CR, Reporter's Record, Volume 3, pages 39-40.  Gonzalez responded that her husband was dead. *Id*. at 39.  The prosecutor asked how he died, to which Gonzalez responded, "They murdered him."  *Id*.  Petitioner's trial counsel interjected, "I'm sorry, I didn't understand."  *Id*.  The prosecutor repeated Gonzalez's statement and then asked, "So your husband was murdered?"  *Id*.  Gonzalez responded affirmatively and the prosecutor asked when he was murdered.  *Id*. at 39-40.  Petitioner's trial counsel then objected "to the relevance of anything further about what happened to her husband."  *Id*. at 40.  Without ruling on the objection, the state district court allowed Gonzalez to testify that her husband was murdered on July 2, 2003.  *Id*.  On direct appeal, the state appellate courts found that petitioner waived error regarding the admission of testimony about the murder because no objection was voiced to the testimony.  *Rubio*, No.14-04-00030-CR, 2004 WL 2963289, *4.

Federal review of a state claim is procedurally barred if the last court to consider the claim clearly based its denial of relief on a procedural default.  *Ylst v. Nunnemaker*, 501 U.S. 797, 802-04, (1991) (holding that federal review of a claim is procedurally barred if the last state court to consider the claim clearly based its denial of relief on procedural default).  The Fifth Circuit has recognized that the Texas contemporaneous objection rule, which requires a timely objection to preserve error for appeal, is strictly or regularly applied, and is therefore an adequate procedural bar.  *Dowthitt v. Johnson*, 230 F.3d 733, 752 (5th Cir. 2000).  The finding by the state appellate court is the "last reasoned opinion" to rest its judgment on the procedural default.  *Ylst*, 501 U.S. at 903.  Therefore, petitioner's complaint regarding the admission of evidence of an extraneous offense is barred under the doctrine of procedural default unless the petitioner can show that he fits within an exception to that rule.  *Id*.

Violation of a "firmly established and regularly followed" state rule is adequate to foreclose review of a federal claim under the doctrine of procedural default.  *Lee v. Keman*, 534 U.S. 362 (2002).  "In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice."  *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).  "This doctrine ensures that federal courts give proper respect to state procedural rules." *Glover v. Cain*, 128 F.3d 900, 902 (5th Cir. 1997).

Petitioner does not allege that he is actually innocent or that he otherwise fits within the fundamental miscarriage of justice exception.  Therefore, he must demonstrate both cause and actual prejudice to avoid the procedural bar.  The United States Supreme Court has held that "the existence of cause for procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule."  *Coleman*, 501 U.S. at 753.  "Examples of external impediments include active government interference or the reasonable unavailability of the factual or legal basis for the claim."  *Rodriguez v. Johnson*, 104 F.3d 694, 697 (5th Cir. 1997). Actual prejudice requires a showing that, based on the success of the underlying defaulted claim, the result of the proceeding would somehow have been different.  *Barrientes v. Johnson*, 221 F.3d 741, 769 (5th Cir. 2000).

Ineffective assistance of counsel may, in some circumstances, constitute cause for a procedural default.  *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000).  "Not just any deficiency will do, however; the assistance must have been so ineffective as to violate the Federal

Constitution." *Id.* "In other words, ineffective assistance adequate to establish cause for the procedural default of some *other* constitutional claim is itself an independent constitutional claim." *Id.* (emphasis in original).

Petitioner has not addressed cause or prejudice with respect to this error.  As discussed below, petitioner's claim that his trial counsel was ineffective for failing to voice an objection at trial to the admission of this evidence is without merit.  Accordingly, petitioner's claim regarding the admission of testimony regarding the un-adjudicated extraneous offense is barred from federal review.

### 3. Prosecutorial Misconduct

Petitioner also complains that the prosecutor engaged in misconduct by eliciting statements from Gonzalez about the murder.  (*Id.*).  The state habeas courts found that petitioner was procedurally barred from challenging the prosecutor's conduct with respect to questioning Gonzalez about the murder because he did not raise the claim on direct appeal.  *Ex parte Rubio*, Application No.66,402-01 at 119.  Alternatively, the state habeas courts held that petitioner failed to allege sufficient facts to show his due process rights were violated by prosecutorial misconduct.  *Id.*

The rule in this circuit is "when a state court bases its decision upon the alternative grounds of procedural default and a rejection of the merits, a federal court must, in the absence of good 'cause' and 'prejudice,' deny habeas relief because of the procedural default. *Cook v. Lynaugh*, 821 F.2d 1072, 1077 (5th Cir. 1987); *see also Hughes v. Dretke*, 412 F.3d 582, 592 (5th Cir. 2005).  Under state law, a claim that could have been raised on direct appeal is procedurally barred from consideration on state collateral review.  *See Ex parte Gardner*, 959 S.W.2d 189, 190 (Tex. Crim. App. 1998); *Busby v. Dretke*, 359 F.3d 708, 719 (5th Cir. 2004)

(establishing that "the *Gardner* rule set forth an adequate state ground capable of barring federal habeas review").  Petitioner does not allege that he is actually innocent or that he otherwise fits within the fundamental miscarriage of justice exception and he fails to present cause or prejudice concerning this error.  Moreover, his ineffective assistance of counsel claims regarding the same are without merit.  Therefore, petitioner's claim of prosecutorial misconduct is barred from federal habeas review.

### 4. Jurisdiction of State District Court

Petitioner maintains the state district court did not have jurisdiction over his cause because the Texas statute for burglary does not contain an enacting clause.  (Docket Entries No.1, No.2).  The state habeas courts found that because petitioner did not raise the jurisdiction issue on direct appeal, he was procedurally barred from raising the same in his state habeas application.  *Ex parte Rubio*, Application No.66, 402-01 at 119-20.  Alternatively, the state habeas courts held that petitioner failed to allege sufficient facts, which if true, would show the state district court lacked jurisdiction.  *Id.*

For the reasons previously discussed, petitioner's challenge to the state district court's jurisdiction is procedurally barred.  *See Ex parte Gardner*, 959 S.W.2d at 190; *Busby*, 359 F.3d at 719.  Petitioner does not allege that he is actually innocent or that he otherwise fits within the fundamental miscarriage of justice exception and he fails to present cause or prejudice concerning this error.  Moreover, his ineffective assistance of counsel claims regarding the same are without merit.  Therefore, petitioner's claim regarding the jurisdiction of the state district court is subject to dismissal.

### 5. Speedy Trial

Petitioner complains that he was denied a speedy trial in violation of the Sixth Amendment.  (Docket Entries No.1, No.2).  Petitioner contends as a result of the delay, he was unable to locate two alibi witnesses.  (*Id*.).  Petitioner does not identify the witnesses, except as undocumented migrant workers, nor does he indicate the facts to which they would have attested.

The record reflects that petitioner, and not his trial counsel, filed a "Motion for Discharge of Delay," seeking a speedy trial under state law.  *Rubio*, No.14-04-00030-CR, Clerk's Record at 43-45.  The state district court denied the motion.  *Id*. at 45.  Although petitioner challenged the denial of the motion in his state habeas application, the state habeas court did not specifically address the issue.  The state habeas court generally found that petitioner waived complaints of trial error because he did not complain of the same on direct appeal and, alternatively, he failed to allege sufficient facts which, if true, would show trial error.  *Ex parte Rubio*, Application No. WR-66,402-01 at 118.

Petitioner fails to overcome the state habeas courts' alternative finding for three reasons.  First, petitioner was represented by counsel when he filed a *pro se* motion for a speedy trial.  A criminal defendant is not entitled to hybrid representation.  *McKaskle v. Wiggins*, 465 U.S. 168, 183 (1983).  Second, petitioner sought relief under state law and not federal law. Third, without more, petitioner fails to show that the eight month delay is sufficient to trigger the speedy trial analysis under *Barker v. Wingo*, 407 U.S. 514, 519- 22 (1972).  Generally, a one year delay is sufficient to warrant judicial examination of the claim.  *United States v. Serna-Villarreal*, 352 F.3d 225, 230 (5th Cir. 2003).  Accordingly, petitioner fails to show the state court's finding regarding trial error with respect to this issue was an unreasonable application of clearly established federal law.

### B. Complete Record

Petitioner contends that he is entitled to a new trial because the State failed to produce complainant Gonzalez's original crime scene statement and the English translation of the statement.  (Docket Entries No.1, No.2).  Petitioner claims that Gonzalez's crime scene statement conflicts with her trial testimony with respect to petitioner's identity.  (Docket Entry No.2).  Petitioner maintains under state law the loss of an exhibit, which cannot be reconstructed, must result in a new trial.  (*Id.*).  The state habeas court held that petitioner failed to allege sufficient facts to show how he was harmed by the alleged failure to provide him with a complete record of trial exhibits.  *Ex parte Rubio*, Application No.66,402-01, page 119.

To the extent that petitioner claims that state law requires a new trial because of the loss or destruction of evidence, he fails to show his entitlement to federal habeas relief.  Violations of state law are generally not cognizable on habeas review unless they render the trial fundamentally unfair.  *Hughes v. Dretke*, 412 F.3d 582, 591 (5th Cir. 2005).  Petitioner fails to state sufficient facts to show the alleged violation rendered his state trial fundamentally unfair.

To the extent that petitioner complains that the loss or destruction of such evidence violates his right to due process, he also fails to show harm.  The failure to preserve potentially useful evidence does not constitute a denial of due process of law unless a criminal defendant shows bad faith on the part of the police.  *Arizona v. Youngblood*, 488 U.S. 51, 58 (1988).  Other than his conclusory allegations, petitioner fails to demonstrate that the loss or destruction of Gonzalez's statement and the translated statement resulted from intentional, bad faith action of state officials.  *See Koch v. Puckett*, 907 F.2d 524, 530 (5th Cir. 1990) (stating that "mere conclusory allegations on a critical issue are insufficient to raise a constitutional claim").

Moreover, the record does not reflect a variance in the Spanish version of complainant's statement and the English translation.  *Rubio*, No.14-04-00030-CR, Reporter's

Record, Volume 3, pages 56-62.  Gonzalez testified that the English translation was an exact translation of the Spanish statement.  *Id.* at 61.  Furthermore, Gonzalez's statements were not admitted as evidence at trial.  Gonzalez was allowed to use the statements to refresh her memory.  *Id.* at 58.

Based on the foregoing, the Court finds that petitioner has failed to show that the state habeas courts' finding was an unreasonable application of federal law.

C. Sufficiency of Evidence to Support Conviction

Petitioner contends that the evidence was legally insufficient to support his burglary of a habitation conviction because the sole witness could not have identified him.  (Docket Entries No.1, No.2).  Petitioner acknowledges that eyewitness identification testimony is sufficient to establish a connection between the accused and a crime.  (*Id.*). He argues that complainant Gonzalez's identification testimony, however, was weak and unreliable because she had little opportunity to view the perpetrator at the time of the crime and her degree of attention was insufficient to make her identification reliable.  (*Id.*).

A federal court tests the sufficiency of evidence in a federal habeas review of a state court conviction under the standard enunciated in *Jackson v. Virginia*, 443 U.S. 307 (1979).  Evidence is sufficient to support a conviction if when viewed in the light most favorable to the verdict, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  *Id.* at 319.  The evidence need not exclude every reasonable hypothesis of innocence or be completely inconsistent with every conclusion except guilt so long as a reasonable trier of fact could find that the evidence established guilt beyond a reasonable doubt.  *United States v. Stevenson*, 126 F.3d 662, 664 (5th Cir. 1997).  Either direct or circumstantial

evidence can contribute to the sufficiency of the evidence underlying the conviction.  *Schrader v. Whitley*, 904 F.2d 282, 287 (5th Cir. 1990).

The Fourteenth Court found the following testimony to be sufficient to support petitioner's burglary conviction, as follows, in pertinent part:

> At trial, Gonzalez stated that she had known appellant for three years prior to the burglary because he dated Anilpas's sister.  Gonzalez testified she became familiar with appellant's voice and build because he had attended family gatherings.  She stated that when the burglars confronted her and Anilpas, she realized one of them was appellant, despite the ski mask, because she instantly recognized his eyes and voice.  She also stated that she was 100 percent sure of appellant's identity because in addition to his eyes, eyelashes, and voice, she recognized his build.  In court, Gonzalez unequivocally identified appellant as one of the burglars.

*Id*. at *2.   The Fourteenth Court further found that "[a]ppellant's argument – that the identification is unreliable because the burglar wore a ski mask and Gonzalez's degree of attention was insufficient – goes to Gonzalez's credibility and is judged by the jury."  *Id*. at *3.

The state appellate courts' legal sufficiency analysis satisfies the *Jackson v. Virginia* standard and is supported by the record.  *See King v. State*, 29 S.W.3d 556, 562 (Tex. Crim. App. 2000) (applying the *Jackson v. Virginia* standard in reviewing the sufficiency of the evidence to support a conviction); *see also Rubio*, No.14-04-00030-CR, 2004 WL 2963289, *1-3.   Accordingly, petitioner has failed to carry his heavy burden to show that the state courts' determination of this issue was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding or that such decision was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court.

<u>D. Ineffective Assistance of Trial Counsel</u>

Petitioner next contends that he was denied the effective assistance of counsel at trial.  (Docket Entries No.1, No.2).  The Sixth Amendment to the United States Constitution guarantees a criminal defendant the right to effective assistance of counsel.  U.S. CONST. amend. VI.  A federal habeas corpus petitioner's claim that he was denied effective assistance of trial counsel is measured by the standard set out in *Strickland v. Washington*, 466 U.S. 668 (1984).  To prevail on an ineffective assistance of counsel claim, petitioner must establish that his counsel's performance was deficient and that the deficiency prejudiced his defense.  *Ogan v. Cockrell*, 297 F.3d 349, 360 (5th Cir. 2002) (citing *Strickland*, 466 U.S. at 692).  The failure to prove either deficient performance or actual prejudice is fatal to an ineffective assistance claim. *Green v. Johnson*, 160 F.3d 1029, 1035 (5th Cir. 1998).

Counsel's performance is deficient when the representation falls below an objective standard of reasonableness.  *Ogan*, 297 F.3d at 360.  Judicial scrutiny of counsel's performance must be "highly deferential," indulging in a "strong presumption" that "trial counsel rendered adequate assistance and that the challenged conduct was the product of a reasoned trial strategy."  *West v. Johnson,*  92 F.3d 1385, 1400 (5th Cir. 1996).  To overcome this presumption, a petitioner "must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment."  *Wilkerson v. Collins*, 950 F.2d 1054, 1065 (5th Cir. 1993).  Mere "error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Strickland*, 466 U.S. at 687-90.  A deficiency in counsel's performance, standing alone, does not equal ineffective assistance of counsel if no actual prejudice is demonstrated.

Counsel's deficient performance results in actual prejudice when a reasonable probability exists "that, but for counsel's unprofessional errors, the result of the proceeding

would have been different."  *Id.* at 694.  "A reasonable probability is a probability sufficient to undermine confidence in the outcome."  *Id.*   Confidence in the outcome of the trial is undermined when counsel's deficient performance renders "the result of the trial unreliable or the proceeding fundamentally unfair." *Pratt v. Cain*, 142 F.3d 226, 232 (5th Cir. 1998) (quoting *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993)).  "Unreliability or unfairness does not result if the ineffectiveness of counsel does not deprive the defendant of any substantive or procedural right to which the law entitles him."  *Pratt*, 142 F.3d at 232 (quoting *Lockhart*, 506 U.S. at 372).

A claim of ineffective assistance of counsel presents a mixed question of law and fact.  *Valdez v. Cockrell*, 274 F.3d 941, 946 (5th Cir. 2001).  Because petitioner's ineffective-assistance claims were previously considered and rejected on state habeas corpus review, the state court's decision on those claims will be overturned only if it is "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1).

The state habeas courts found that petitioner failed to allege sufficient facts to show that the conduct of his trial counsel was deficient or prejudicial.  *Ex parte Rubio*, Application No.66,402-01, page 118.  The state habeas courts further found that "[t]he totality of the representation afforded the applicant was sufficient to protect his right to reasonably effective assistance of counsel in the primary case."  *Id*. at 119.

## 1. Failure to Strike Veniremen

Petitioner complains that his trial counsel was ineffective because he did not move to strike for cause venireman number 35 from the venire panel even though she was later stricken *via* a peremptory strike.  (Docket Entry No.2).  Petitioner complains that had she been stricken for cause, trial counsel could have used the limited peremptory strikes to remove

venireman number 7 or number 46. Venireman number 35 did not serve on the jury; under such circumstances, petitioner fails to overcome the presumption that his trial counsel's decision not to challenge venireman number 35 for cause fell within the broad range of objectively reasonable professional discretion. *See Strickland*, 466 U.S. at 690.

Next, he complains that trial counsel was ineffective because he did not move to strike for cause veniremen numbers 7, 35, and 46. (Docket Entry No.2). Petitioner claims these jurors were biased and therefore unqualified to serve on the jury. (*Id.*). As previously discussed, petitioner fails to show that the state courts' finding regarding trial error with respect to this issue was an unreasonable application of clearly established federal law; therefore, he also fails to show the same with respect to his trial counsel's failure to move to strike these jurors.

## 2. Failure to Investigate

Petitioner contends trial counsel Duer rendered constitutionally ineffective assistance of counsel by his failure to investigate the crime scene, to hire a private investigator, to locate missing witnesses, and to procure a translated copy of the complainant's statement before trial. (Docket Entry No.2). He claims Duer failed to have a firm command of the facts and the law in this case. (*Id.*). The state habeas courts found that petition failed to show that his trial counsel's investigation fell below an objective standard of reasonableness or that the outcome of the case would have been different but for these alleged deficiencies. *Ex parte Rubio*, Application No.66,402-01 at 119.

Counsel "has a duty to make a reasonable investigation of the defendant's case or to make a reasonable decision that a particular investigation is unnecessary." *Ransom v. Johnson*, 126 F.3d 716, 723 (5th Cir. 1997). "The reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions. . . . In

particular, what investigation decisions are reasonable depends critically on such information.'" *Boyd v. Johnson*, 167 F.3d 907, 910 (5th Cir. 1999) (quoting *Strickland*, 466 U.S. at 688). "Defense counsel is not required 'to investigate everyone whose name happens to be mentioned by the defendant.'" *Schwander v. Blackburn*, 750 F.2d 494, 500 (5th Cir. 1985). To determine the reasonableness of counsel's decision to limit the scope of his investigation under prevailing professional norms, the Court analyzes such conduct as follows:

> [S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation. In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments.

*Strickland*, at 690-91. Moreover, as with any ineffective assistance of counsel claim, the petitioner must prove that an alleged breach of his attorney's duty to investigate "resulted in an actual and substantial disadvantage to the course of his defense." *Baldwin v. Maggio*, 704 F.2d 1325, 1333 (5th Cir. 1983).

   The scope of a defense counsel's pretrial investigation necessarily follows from the decision as to what the theory of defense will be. *Soffar v. Dretke*, 368 F.3d 441, 473 (5th Cir. 2004), *amended on rehearing in part on other grounds*, 391 F.3d 703 (5th Cir. 2004). In this case, the only issue at trial was the identity of the burglar. Only two witnesses testified. Complainant Gonzalez testified that she recognized petitioner as one the burglars from his voice, eyelashes, and body build. *Rubio*, No.14-04-00030-CR, Reporter's Record, Volume 3, pages 25-37. She indicated that both she and Anilpas recognized petitioner as soon as petitioner talked. *Id*. at 30. She further testified that she and Anilpas told the police who they thought burglarized

their home.  *Id.* at 37.  Officer Tim Troxwell, of the City of South Houston Police Department, testified that he met with both Gonzalez and Anilpas soon after the burglary and that they both gave consistent stories to what had happened.  *Id.* at 81.  He also described the crime scene.  *Id.* at 81-83.

Gonzalez also testified that she saw her husband jump through a back bedroom window and she knew he was going to get help.  *Id.* at 34-35.  Duer objected to the testimony on the ground that she lacked personal knowledge that he had jumped through the window or where he went.  *Id.* at 34.  On cross-examination, Duer did not question her about size of the window although he questioned her about location of the window and her whereabouts and the whereabouts of the burglars when her husband jumped.  *Id.* at 65-66.  Duer attempted to impeach Gonzalez's testimony by challenging her previous statements regarding the burglars' physical appearance and actions.  Duer extensively questioned her about whether the burglars asked for drugs, whether they spoke to her directly, whether she recognized any of petitioner's tattoos on the outside of his eyelids and hands, how the burglars referred to her, whether she noticed any other distinguishing features such as facial hair, what items the burglars touched in the trailer home, and where her husband was when all of this transpired.  *Id.* at 40-74.

Petitioner complains that his trial counsel never visited the crime scene and had he visited the crime scene, he would have discovered that evidence that could have been used to impeach Gonzalez's testimony.  Specifically, petitioner claims his trial counsel would have discovered that the window through which Gonzalez claims her husband fled was too small for a person to get through.  (Docket Entry No.2).  Petitioner further complains that Duer did not review the prosecutor's file until trial.  He claims the record shows that Duer made his first request for translation of Gonzalez's initial statement, which was written in Spanish, ten minutes

after trial started.  Petitioner claims that had Duer investigated the statement, he would have discovered that it conflicted with Gonzalez's testimony about what she told police about petitioner at the scene of the crime.  (*Id.*).  Petitioner presents no evidence to support his allegations regarding the size of the window or complainant's statement.  Complainant's statement was not admitted into evidence at trial and she testified that the English translation was the same as her original Spanish statement.

The record is silent as to the nature and extent of counsel's pretrial investigation into the facts and circumstances of petitioner's case.  The record, however, affirmatively shows that Attorney Duer did not review the complainant's statement until trial had commenced.  *Rubio*, No.14-04-00030-CR, Reporter's Record, Volume 3, page 5.  Even so, Attorney Duer's representation at trial reflects that he had a thorough knowledge of the case and the relevant law.  Moreover, petitioner has not demonstrated that the result of his trial would have been different had Duer conducted a more thorough investigation.  *See United States v. Green*, 882 F.2d 999, 1002-003 (5th Cir. 1989) (defendant alleging failure to investigate must allege with specificity what investigation would have revealed and how it would have altered the outcome of the trial).

Petitioner also contends that Duer did not investigate petitioner's alibi that on the night of the murder he was with two friends, who were undocumented migrant workers from Mexico, and he did not request the appointment of a private investigator.  (Docket Entry No.2).  Petitioner claims that had one been appointed, the investigator could have located his two friends and insured their appearance at court by subpoena.  Petitioner claims an investigator would have also taken statements from Gonzalez and Anilpas "in regards that they said, 'it was never Mr. Rubio to begin with' as the statements read."  (Docket Entry No.2, page 28).

"Counsel prejudices his client's defense when he fails to call a witness who is central to establishing the defense's theory-of-the case, and the jury is thereby allowed to draw a negative inference from that witness's absence." *Harrison v. Quarterman*, 496 F.3d 419, 427 (5th Cir. 2007); *Bryant v. Scott*, 28 F.3d 1411, 1418 (5th Cir. 1994) ("[Counsel's] complete failure to investigate alibi witnesses fell below the standard of a reasonably competent attorney practicing under prevailing professional norms").  However, "[c]omplaints of uncalled witnesses are not favored, because the presentation of testimonial evidence is a matter of trial strategy and because allegations of what a witness would have testified are largely speculative." *Boyd v. Estelle*, 661 F.2d 388, 390 (5th Cir. 1981).  Petitioner has not established what information these witnesses would have provided; nor has he shown that an investigator would have been able to locate such witnesses, given the transitory nature of their occupation and their alien status.  Therefore, he fails to show that he was prejudiced by trial counsel's failure to investigate his alibi witnesses.

Likewise, petitioner fails to show that he was prejudiced by counsel's failure to procure, via an investigator, an out-of-court statement from complainant or her husband that would contradict Gonzalez's original written statement.  As previously discussed, the statement was not admitted at trial and is not part of the trial record.  Moreover, complainant testified unequivocally that she was 100 percent sure that petitioner was one of the burglars.  *Rubio*, No.14-04-00030-CR, Reporter's Record, Volume 3, page 40.

Based on this record, the Court concludes that the state court's finding that petitioner failed to allege sufficient facts to show that Attorney Duer's pre-trial investigation was deficient or prejudicial is a reasonable application of clearly established federal law.

### 3. Failure to Prepare for Trial

Petitioner maintains that Attorney Duer failed to file any pre-trial motions; specifically, petitioner alleges that Duer failed to file a motion *in limine* to prevent the prosecutor from bringing up evidence regarding the murder of Oliver Anilpas.  (Docket Entry No.2, page 26).  The state habeas courts found that petitioner failed to show that his trial counsel's preparation fell below an objective standard of reasonableness or that the outcome of the case would have been different but for these alleged deficiencies.  *Ex parte Rubio*, Application No.66,402-01 at 119.

Petitioner indicates, and the record shows, that petitioner filed a motion for a speedy trial and a motion for discovery.  *Rubio*, No.14-04-00030-CR, Clerk's Record, pages 16-29, 43-46.  The state district court denied the speedy trial motion but took no action on petitioner's discovery motion.  Instead, the state district court entered its own Discovery Order, months after petitioner filed such motion.  *Id.* at 35-37.  As previously discussed, petitioner has not shown that he was entitled to relief on a motion for a speedy trial; therefore, he fails to show that Attorney Duer was deficient for failing to file a motion seeking one.  *See Jones v. Barnes*, 463 U.S. 745, 751 (1983) (noting that petitioner has no constitutional right "to compel appointed counsel to press non-frivolous points requested by the client if counsel, as a matter of professional judgment, decides not to present those points").  Petitioner also fails to show what additional preparation Attorney Duer needed to undertake with respect to discovery, particularly in light of the state district court's discovery order.

Petitioner further fails to show that Attorney Duer's representation was deficient by his failure to file a motion *in limine* to prevent the prosecution from introducing evidence during the guilt-innocence phase of trial that complainant's husband, Oliver Anilpas was murdered a few months after the burglary while petitioner was in jail.  The record does not

reflect that petitioner was charged with the murder or that he was even a suspect in the murder. (Docket Entry No.2).  Therefore, the record does not reflect whether the state district court would have granted a motion *in limine* with respect to the same.  A failure by counsel to file motions does not *per se* constitute ineffective assistance of counsel.  *See Kimmelman v. Morrision*, 477 U.S. 365, 383-84 (1986) (suppression motion).  A determination of ineffectiveness depends on whether such motion or objection would have been granted or sustained had it been made.  *See United States v. Oakley*, 827 F.2d 1023, 1025 (5th Cir. 1987) (suppression motion).  Moreover, petitioner fails to show that he was prejudiced by the admission of such evidence as discussed below.

Petitioner also maintains that his trial counsel failed to visit him in jail to go over any trial strategy, defense, witness statements, or to prepare petitioner for trial.  (Docket Entry No.2).  Petitioner claims that Attorney Duer did not talk with him at court except to ask for a re-setting and to indicate that everything would be taken care of at trial.  (*Id.*).  Assuming counsel's performance was deficient, petitioner fails to explain how such actions would have made a difference in the outcome of his case.  "Mere general assertion that prejudice resulted from lack of preparation is insufficient to reverse a conviction for ineffective assistance of counsel." *Oakley*, 827 F.2d at 1026.

Accordingly, petitioner fails to show the state court's finding that petitioner failed to allege sufficient facts to show that Attorney Duer's conduct was deficient or prejudicial is an unreasonable application of clearly established federal law.

<u>4. Failure to Object</u>

Petitioner also claims that Attorney Duer rendered constitutionally ineffective assistance of counsel by failing to object to the interpreter who translated complainant's

statement, to the state district court's jurisdiction, to the admission of extraneous offense testimony, and to the lack of a reasonable doubt instruction.  (Docket Entry No.2).  The state habeas courts found that petitioner had failed to overcome the presumption that trial counsel's decision not to object was made in the exercise of reasonable professional judgment, and that petitioner failed to meet his burden in showing that his attorney was ineffective for failing to object.  *Ex parte Rubio*, Application No.66,402-01 at 119.

Petitioner claims that the interpreter who translated complainant's statement from Spanish to English was not sworn under oath as required by state law.  (Docket Entry No.2).  Petitioner maintains the record shows the English translation contained misstatements and yet Attorney Duer failed to object to the translation or the interpreter.  (*Id.*).  Petitioner, however, fails to overcome complainant's testimony that the English translation of her original statement in Spanish was accurate.  Moreover, he fails to specify the misstatements allegedly made in the translation.  Therefore, he fails to show that he was prejudiced by counsel's failure to object that the interpreter was not sworn as required by state law.

Petitioner maintains that trial counsel also failed to object to the state district court's jurisdiction to consider his case on grounds that the burglary statute, under which he was charged and convicted, did not contain an enacting clause.  (*Id.*).  A trial "counsel cannot have rendered ineffective assistance of counsel by failing to make an objection that would have been meritless."  *Turner v. Quarterman*, 481 F.3d 292, 298 (5th Cir. 2007).  In 1999, The Texas Legislature amended section 30.02 of the Texas Penal Code.  *See* Act of June 18, 1999, 76 Leg., R.S., ch. 727, § 1, 1999 Tex. Gen. Laws 3336 (effective Sept. 1, 1999).  The amendment was prefaced by the enacting clause, "Be it enacted by the Legislature of the State of Texas."  *Id.*

Therefore, the Texas burglary statute, under which petitioner was convicted was duly enacted; thus, the state district court that convicted him had jurisdiction over his case.

Finally, petitioner contends that trial counsel Duer was constitutionally ineffective because he did not object to testimony of an extraneous offense[1] and did not request a reasonable doubt instruction with respect to the extraneous offense.  (Docket Entry No.2).  Petitioner complains that Attorney Duer's conduct was deficient because he did not object that Gonzalez's testimony gave rise to an implication that petitioner had committed an extraneous offense, *i.e.,* murdered Anilpas.  He also complains that Duer did not request the state district court to instruct the jury to disregard her testimony.  He further complains that Duer did not request the state district court to include in the jury charge a reasonable doubt instruction not to consider evidence that would imply that petitioner murdered Anilpas unless jurors believed that the State had proven beyond a reasonable doubt that he had done so.  (Docket Entry No.2).

The record shows that the jury was instructed that their "sole duty" was to determine whether or not the defendant was guilty under the indictment and to restrict their deliberations solely to that issue.  *Rubio*, No.14-04-00030-CR, Clerk's Record, page 76.  This mandatory direction foreclosed independent jury consideration of testimony regarding the murder.  In light of Gonzalez's unequivocal testimony that she was 100 percent sure that petitioner was the burglar and the restrictive charge, the Court finds that petitioner suffered no prejudice from his trial counsel's failure to object to Gonzalez's testimony about the murder of her husband and by his failure to request an instruction to disregard or a reasonable doubt instruction in the jury charge.  The Court further finds that petitioner suffered no prejudice

---

[1] The record shows that after complainant testified that "they" murdered her husband, Attorney Duer objected that such testimony was not relevant to whether petitioner had committed burglary.  *Rubio*, No.14-04-00030-CR, Volume 3, page 40.  The state district court did not rule on the objection but allowed Gonzalez to testify when her husband was murdered.  *Id.*

during the punishment phase of trial from his trial counsel's failure to object to the admission of such evidence because the state district court, and not the jury, sentenced petitioner after reviewing a presentence report.

Based on the foregoing, the Court finds that petitioner has failed to show his entitlement to federal habeas relief on his claims that trial counsel rendered constitutionally ineffective assistance of counsel.  Accordingly, respondent is entitled to summary judgment on these grounds.

### E. Ineffective Assistance of Appellate Counsel

Petitioner contends his appellate counsel rendered constitutionally ineffective assistance of counsel by failing to raise on direct appeal issues challenging (1) the allegedly biased jurors; (2) the admission of extraneous offense testimony; (3) the denial of his motion for a speedy trial; (4) the jurisdiction of the state court to hear his cause for want of an enacting clause in the burglary statute; and (5) the ineffectiveness of trial counsel for failing to object to the jury charge and to request a reasonable doubt instruction.  (Docket Entries No.1, No.2).  The state habeas courts held that petitioner failed to allege sufficient facts, which if true, would show that his appellate counsel's conduct was deficient or prejudicial.  *Ex parte Rubio*, Application No.66,402-01 at 118, 119.

To establish that appellate counsel's performance was deficient in the context of an appeal, a petitioner must show that his attorney was objectively unreasonable in failing to find arguable issues to appeal, *i.e.*, that counsel unreasonably failed to discover nonfrivolous issues and raise them.  *Smith v. Robbins*, 528 U.S. 259, 285 (2000).  Counsel need not raise every nonfrivolous ground of appeal, but should instead present "[s]olid, meritorious arguments based on directly controlling precedent."  *Schaetzle v. Cockrell*, 343 F.3d 440, 445 (5th Cir. 2003).  If

he succeeds in showing a deficiency, a petitioner then must demonstrate that he was actually prejudiced by his counsel's errors. *Robbins*, 528 U.S. at 285-86 (noting that, where, as here, the defendant has received appellate counsel, there is no reason to presume the defendant has been prejudiced); *Roe v. Flores-Ortega*, 528 U.S. 470, 484 (2000). To determine whether appellate counsel was deficient, the Court thus must consider whether the omitted challenge "would have been sufficiently meritorious such that [the attorney] should have raised it on appeal." *United States v. Phillips*, 210 F.3d 345, 348 (5th Cir. 2000). To establish actual prejudice, the defendant must show a "reasonable probability" that, but for his counsel's deficient performance, "he would have prevailed on appeal." *Robbins*, 528 U.S. at 285.

In addition to the sufficiency of the evidence, petitioner's appellate counsel challenged the admission of Gonzalez's testimony regarding the murder of her husband. *Rubio*, No.14-04-00030, 2004 WL 2963289, *1. Because the Court has determined that this issue and the others that petitioner contends should have been raised on direct appeal lack merit, appellate counsel did not render ineffective assistance by not presenting to the state appellate courts issues regarding the allegedly biased jurors, the motion for a speedy trial, the state district court's jurisdiction court to hear his cause for want of an enacting clause in the burglary statute, and the ineffectiveness of trial counsel for failing to object to the jury charge and to request a reasonable doubt instruction. Appellant counsel is not deficient in failing to present a meritless claim on direct appeal. Moreover, petitioner fails to show a reasonable probability that the appeal would have had a different outcome had his appellate counsel addressed these issues on direct appeal. Therefore, he fails to show his entitlement to federal habeas relief with respect to the adequacy of the representation of his appellate counsel.

## IV. EVIDENTIARY HEARING

Petitioner has requested an evidentiary hearing be held in this cause.  (Docket Entry No.11).  A petitioner must develop the factual basis of his claim in state court to be entitled to an evidentiary hearing in federal court.  28 U.S.C. § 2254(e)(2).  "Federal courts sitting in habeas are not an alternative forum for trying facts and issues which a prisoner made insufficient effort to pursue in state proceedings."  *Williams v. Taylor*, 529 U.S. 420, 437 (2000).  Under the AEDPA, if a petitioner failed to develop the factual basis of a claim in state court, he is entitled to a federal evidentiary hearing only if: (1) the claim relies on either (a) a new rule of constitutional law, made retroactive on collateral review by the Supreme Court, that was previously unavailable or (b) a factual predicate that could not have been previously discovered through the exercise of due diligence and (2) the facts underlying the claim are sufficient to establish by clear and convincing evidence that, but for the constitutional error, no reasonable fact-finder would have found the petitioner guilty of the underlying offense.  *Foster v. Johnson*, 293 F.3d 766, 775 n. 9 (5th Cir. 2002); 28 U.S.C. § 2254(e)(2).  The lack of an evidentiary hearing in state court does not effect the presumption that the state court findings of fact are correct.  See 28 U.S.C. § 2254 (e)(1); *see also Valdez v. Cockrell*, 274 F.3d 941, 950-51 (5th Cir. 2001).

In this case, petitioner was afforded a full and fair opportunity to develop and litigate his claims for relief herein during his state habeas corpus proceeding.  Petitioner has presented this Court with no new evidence or factual theories supporting any of his claims that were unavailable to him, despite the exercise of due diligence, during his state habeas corpus proceeding.  Likewise, petitioner does not identify any new legal theories supporting his claims for relief that were unavailable at the time petitioner filed and litigated his state habeas corpus claims.  Nor does petitioner identify any additional evidence which he was unable to develop and

present to petitioner's state habeas court despite the exercise of due diligence on his part. Under such circumstances, petitioner is not entitled to a federal evidentiary hearing to further develop the facts supporting his claims herein. Accordingly, petitioner's request for an evidentiary hearing and the expansion of the record (Docket Entry No.11) is DENIED.

## V. CERTIFICATE OF APPEALABILITY

A certificate of appealability from a habeas corpus proceeding will not issue unless the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This standard "includes showing that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (internal quotations and citations omitted). Stated differently, the petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.*; *Beazley v. Johnson*, 242 F.3d 248, 263 (5th Cir. 2001). On the other hand, when denial of relief is based on procedural grounds, the petitioner must not only show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right," but also that they "would find it debatable whether the district court was correct in its procedural ruling." *Beazley*, 242 F.3d at 263 (quoting *Slack*, 529 U.S. at 484); *see also Hernandez v. Johnson*, 213 F.3d 243, 248 (5th Cir. 2000). A district court may deny a certificate of appealability, sua sponte, without requiring further briefing or argument. *Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000). The Court has determined that petitioner has not made a substantial showing of the denial of a constitutional right. Therefore, a certificate of appealability from this decision will not issue.

## V. CONCLUSION

Finding no unreasonable application of clearly established federal law in the record of the state habeas proceeding and appellate courts, the Court ORDERS the following:

1.    Respondent's motion for summary judgment (Docket Entry No.9) is GRANTED.

2.    Petitioner's petition for federal habeas relief is DENIED.

3.    A certificate of appealability is DENIED.

4.    This habeas action is DISMISSED with prejudice.

5.    Petitioner's motion for an evidentiary hearing and the expansion of the record (Docket Entry No.11) is DENIED.

6.    All other pending motions, if any, are DENIED.

The Clerk will provide a copy to the parties.

SIGNED at Houston, Texas, this 13th day of March, 2008.

_____
MELINDA HARMON